# EXHIBIT 107

Mitchell J. Green (SBN 127718)
CURTIS & GREEN, LLP
1101 Fifth Ave, Suite 310
San Rafael, CA 94901
Tel: 415.456.4600 / Fax: 415.453.4095
Email: mgreen@curtisgreenlaw.com

Attorney for Donald Golden, M.D.

SUPERIOR COURT FOR THE STATE OF CALIFORNIA
COUNTY OF ALAMEDA - UNLIMITED JURISDICTION

| | |
|---|---|
| DONALD GOLDEN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP; MEDAMERICA; MARK ALDERDICE; ROBERT BUSCHO; AND DOES 1 THROUGH 100, AND EACH OF THEM, INCLUSIVE, <br><br> Defendants, | Case No. 08388602 <br><br> [PROPOSED] THIRD AMENDED COMPLAINT |

Plaintiff alleges the following:

## PARTIES

1. DONALD GOLDEN, M.D., is, and at all times herein mentioned was, an individual, residing in the County of Alameda, State of California. Plaintiff is now and at all times mentioned herein was a duly licensed physician in good standing in the State of California. Plaintiff is African-American.

2. Defendant CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP ("CEP") is, and at all times mentioned herein was a business entity purporting to be a partnership, organized and existing under the laws of the State of California, and qualified to do business and doing business in the State of California. CEP's principal place of business is in Alameda County, California. With over 800 physicians, CEP is the largest provider of physician staffing and management services for Emergency Departments in California. CEP's clients

include more than 60 district and county hospitals and trauma centers, as well as non-profit and academic university hospitals.

3. Defendant MEDAMERICA is a practice management support company created by CEP in or about 1975.

4. Defendant MARK ALDERDICE, M.D. was the San Francisco Regional Medical Director for CEP at the time of the incidents set forth herein. As such, he was a managing agent of and partner in Defendant CEP.

5. Defendant ROBERT BUSCHO, M.D. was the Medical Director at Seton Coastside Medical Facility ("SMCC") for CEP at the time of the incidents set forth herein. As such, he was a managing agent of and partner in Defendant CEP.

6. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 100, inclusive (collectively "Defendants"), are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names, and will amend this First Amended Complaint to show their true names and capacities when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the DOE Defendants aided and abetted and acted in concert with and in conspiracy with Defendants Alderdice and Buscho in discriminating and retaliating against and wrongfully terminating Plaintiff.

7. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of Defendants was the agent and employee of each of the remaining Defendants and in doing the things hereinafter alleged, was acting within the scope of such agency or employment.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. In 2000, Plaintiff became a party to a written partnership agreement with CEP. ("Agreement"). A true and correct copy of this Agreement is attached hereto as Exhibit 1 and incorporated herein for all purposes

9. Although he was a partner in the terminology of the Agreement, Plaintiff was sufficiently under the supervision, regulation, and control of CEP as to be an employee for purposes of applying the California Fair Employment and Housing Act.

[PROPOSED] THIRD AMENDED COMPLAINT
-2-

10. Plaintiff was subject to the supervision and control of CEP through rules and regulations regarding conduct and assignment of work locations and hours. CEP set the number of hours he worked and controlled the sites to which he was assigned.

11. Plaintiff was paid as an employee. Like all CEP doctors, he was paid on an hourly basis, at a hourly rate specific to site at which he worked. He did not share in CEP's profits and losses.

12. Plaintiff was subject to termination by CEP like an employee.

13. Plaintiff, as one of just 800 physicians, did not have the ability to control or influence CEP.

14. Plaintiff worked at several health care facilities under contract with CEP. In or abound 2004, Plaintiff was hired to work at an emergency room facility known as Seton Coastside. Plaintiff is not board certified in emergency room medicine or any other speciality. At the time he applied to Seton Coastside he did not know and was not given notice by anyone that board certification was a requirement for a position at Seton Coastside.

15. At the time Plaintiff was hired to work at Seton Coastside, one or more Caucasian physicians worked at Coastside without board certification.

16. In or about 2006, Plaintiff was favorably reviewed by his supervisors and recommended for advancement within CEP. Plaintiff was promoted in or about 2007.

17. In 2007, Alderdice and Buscho removed Plaintiff from the Seton Coastside schedule on the alleged ground that he was not board certified and that board certification was a Medical Staff Bylaw requirement and an essential qualification for working at Seton Coastside.

18. At the time Alderdice and Buscho removed Plaintiff, one or more Caucasian physicians who, like Plaintiff, were not board certified, worked at and were allowed to continue working at Seton Coastside.

19. Shortly after Plaintiff was removed from the Seton Coastside schedule, Plaintiff's Medical Staff privileges came up for renewal before the Medical Staff of Seton Medical Center.

20. The Medical Staff solicited recommendations directly from Buscho and Alderdice for the manner in which to handle Plaintiff's reappointment. Both recommended to the Medical

Staff that Plaintiff's reappointment be denied on the grounds that Plaintiff was not board certified. At the time of these recommendations, one or more Caucasian physicians who, like Plaintiff, were not board certified, worked at and were allowed to continue working at Seton Coastside.

21. At or about this same time, Alderdice actively misled Plaintiff in an attempt to obtain his voluntary resignation from the Medical Staff. Alderdice did so by making knowingly false statements to Plaintiff that his reappointment application would be denied because he lacked board certification, that such denial would be a reportable event on all future medical staff applications, and that he (Alderdice) had no control over the Medical Staff's decision.

22. As a result of Alderdice's refusal to seek a waiver of the purported board certification requirement for Plaintiff under terms and conditions substantially similar to those obtained for one or more Caucasian physicians practicing at Seton Coastside, Plaintiff's application for renewal of his Medical Staff privileges at Seton Medical Center was denied.

23. Following this discriminatory conduct, Plaintiff initiated an internal grievance proceeding challenging his removal from the Seton Coastside schedule based on race discrimination and other claims.

24. The grievance was protected activity in opposition to unlawful discrimination.

25. On review, CEP denied the grievance and, in so doing, ratified and approved the discriminatory conduct of both Buscho and Alderdice.

26. Thereafter, Defendants retaliated against Plaintiff for having initiated and pursued the grievance. Pursuant to the Agreement, Defendants were required to assist Plaintiff in obtaining comparable employment once he was removed from the Seton Coastside schedule. Defendants made no attempt to place Plaintiff at another CEP facility. To the contrary and unbeknownst to Plaintiff, Defendants took affirmative steps to block Plaintiff from obtaining gainful employment at other CEP facilities and CEP removed Plaintiff without cause or justification from one or more employment positions that he held as of the time of the grievance and in which he had previously received excellent evaluations.

27. As a consequence of Defendants' wrongful and retaliatory conduct, Plaintiff is not currently being assigned work at any CEP facility. Pursuant to CEP policies and procedures, the failure to meet a specified minimum number of hours results in adverse action, including termination from CEP. Plaintiff's termination from CEP for insufficient hours is impending.

28. As a proximate result of Defendants' wrongful and discriminatory actions against Plaintiff as set forth herein, Plaintiff has been harmed in an amount to be shown according to proof in that Plaintiff has suffered and will continue to suffer the loss of wages, salary, benefits, and other amounts of compensation that Plaintiff would have received had Plaintiff not been removed from his position at Seton Coastside, been denied reappointment and thereafter retaliated against.

29. As a further proximate result of Defendants' wrongful and discriminatory actions against Plaintiff as set forth herein, Plaintiff has been harmed in an amount to be shown according to proof in that Plaintiff has suffered and will continue to suffer the loss of intangible employment-related opportunities in that the medical community is closely connected and Plaintiff, by reason of having brought this action against CEP, will be denied other opportunities that would have benefitted him economically.

30. As a proximate result of Defendants' wrongful and discriminatory actions against Plaintiff as set forth herein, Plaintiff has been harmed in that Plaintiff has suffered and will continue to suffer mental anguish and emotional distress in an amount to be shown according to proof.

31. The wrongful and discriminatory actions against Plaintiff as set forth herein were done by Defendants with malice, fraud and oppression, and with reckless disregard of the Plaintiff's rights under state and federal statutes. The conduct was intended to harm Plaintiff. all of which entitle Plaintiff to recovery of exemplary and punitive damages, and to recovery of reasonable attorneys fees.

32. Plaintiff has exhausted all administrative remedies required as a condition to bringing this action. On or around February 28, 2008, the California Department of Fair Employment and Housing issued Plaintiff right to sue letters naming each defendant herein.

## FIRST CAUSE OF ACTION
### (Violation of FEHA)
### CEP

33. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 32 above as though fully set forth herein.

34. All of Defendants' conduct toward Plaintiff as alleged herein was motivated by an impermissible discriminatory or retaliatory intent and adversely affected the terms, conditions and privileges of Plaintiff's employment.

35. Defendants' conduct in removing Plaintiff from the Seton Coastside schedule was undertaken on account of his race.

36. Defendants' conduct in refusing to waive the purported board certification requirement for Medical Staff membership at Seton Medical Center was undertaken on account of his race.

37. Defendants' conduct in preventing Plaintiff from obtaining employment at other CEP facilities and in removing him from such employment as he held following the grievance proceeding was in retaliation for Plaintiff's conduct in opposing Defendants' discriminatory conduct and initiating and participating in a grievance proceedings intended to correct that wrongful conduct.

38. All of Defendants' conduct as alleged herein was in violation of California Fair Employment and Housing Act, Government Code § 12940.

## SECOND CAUSE OF ACTION
### (Public Policy Tort)
### CEP

39. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 32 above as though fully set forth herein.

40. The California Constitution (Article I, §§7 and 8) and the California Fair Employment and Housing Act (Government Code §12900 et seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et. seq.) establish a fundamental public policy forbidding discrimination against any person based on race.

41. All of Defendants' conduct toward Plaintiff as alleged herein was motivated by an impermissible discriminatory and retaliatory intent based on race and, as such, were in violation of the public policy of the State of California.

### THIRD CAUSE OF ACTION
(Unruh Act, Civ. Code § 51)
All Defendants

42. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 32 above as though fully set forth herein.

43. All of Defendants' conduct as alleged herein denied Plaintiff his right to full and equal accommodations, advantages, facilities, privileges, and services in business establishments of every kind, and did so on account of his race.

### FOURTH CAUSE OF ACTION
(Breach Of Fiduciary Duty)
Defendants Alderdice and Buscho

44. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 32 above as though fully set forth herein.

45. A partner owes a fiduciary duty of care to the partnership and other partners in the conduct of the partnership business.

46. Alderdice, Buscho and Golden were partners in CEP.

47. Alderdice, Buscho breached their duty of care to CEP and to Plaintiff by knowingly and intentionally removing Plaintiff from the Seton Coastside schedule and refusing to waive the purported board certification requirement so as to allow him to be recredentialed by Seton Medical Center and by the other conduct alleged herein.

### FIFTH CAUSE OF ACTION
(Breach Of The Covenant of Good Faith And Fair Dealing)
All Defendants

48. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 32 above as though fully set forth herein.

49. An implied term of the Agreement is a covenant of good faith and fair dealing that neither party will take any action to make the fulfillment of the obligations of the contract unreasonably difficult or impossible.

50. Pursuant to Corporations Code § 16404(d), a partner shall discharge all duties to the partnership and the other partners and exercise any rights consistently with the obligation of good faith and fair dealing.

51. Plaintiff has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the Agreement.

52. Defendants breached the implied covenant of good faith and fair dealing by conjuring up false disputes with Plaintiff, by refusing to wave or attempt to waive the purported board certification requirement on behalf of plaintiff has it had previously done on behalf of others, and by interfering with plaintiff's ability to obtain or maintain a position at one or more other sites at which CEP was contracted to provide medical care through its partners.

### SIXTH CAUSE OF ACTION
(Violation of 42 U.S.C.A. §1981)
**All Defendants**

53. Plaintiff incorporates and realleges those allegations set forth in Paragraphs 1 through 52 above as though fully set forth herein.

54. Defendants, and each of them, intentionally discriminated against plaintiff on the basis of race in regard to the performance of; enjoyment of benefits, privileges, terms, and conditions of; and termination of his contractual partnership relationship with CEP. As more particularly described in paragraphs 17-22 and 27, plaintiff was removed from the schedule at Seton Coastside and has, a consequence thereof, in fact been terminated from the CEP partnership because of insufficient hours.

55. Defendants, and each of them, intentionally retaliated against plaintiff for engaging in protected activity in connection with the terms and conditions of his contractual partnership relationship with CEP. As more particularly alleged in paragraphs 23-27, plaintiff engaged in protected activity by filing a grievance, after which he suffered adverse employment action at hands of defendant CEP, which acted in retaliation against plaintiff because of the protected activity in which he engaged.

IN WITNESS WHEREFORE, Plaintiff prays judgment as follows:

FOR THE FIRST CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation;

    For damages for loss of economic opportunity;

    For damages for mental anguish and emotional distress;

    For punitive damages; and

    For injunctive relief enjoining Defendants from terminating Plaintiff, or, as appropriate, ordering him reinstated.

FOR THE SECOND CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation;

    For damages for loss of economic opportunity;

    For damages for mental anguish and emotional distress; and

    For punitive damages.

FOR THE THIRD CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation;

    For damages for loss of economic opportunity;

    For damages for mental anguish and emotional distress; and

    For treble damages.

FOR THE FOURTH CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation;

    For damages for loss of economic opportunity;

    For damages for mental anguish and emotional distress; and

    For punitive damages.

FOR THE FIFTH CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation.

FOR THE SIXTH CAUSE OF ACTION

    For general damages for lost wages, salary, benefits and compensation;

    For damages for loss of economic opportunity;

For damages for mental anguish and emotional distress, to the maximum extent allowed by law; and

For punitive damages, to the maximum extent allowed by law.

FOR ALL CAUSES OF ACTION

Costs of suit, including attorney's fees; and

For such other relief as the Court may see fit to grant.

Dated: ~~December ___, 2009~~ 1/15/10

CURTIS & GREEN, LLP

By: _____
Mitchell J. Green
Attorney for Donald Golden, M.D.

|     |                                                                                                                           |
| --- | ------------------------------------------------------------------------------------------------------------------------- |
| 1   | PROOF OF SERVICE                                                                                                          |
| 2   | I, Mitchell J. Green, hereby declare:                                                                                     |
| 3   |                                                                                                                           |
| 4   | My business address is 1101 Fifth Ave., Suite 310, San Rafael, CA 94901 in the County of Marin. I am over the age of eighteen years and I am not a party to the foregoing action. |
| 5   | On January 15, 2010, I served copies of the following document(s):                                                        |

THIRD AMENDED COMPLAINT

on the parties listed below, as follows:

____ (by mail) by depositing a true copy thereof in a sealed envelope with postage fully paid in the United States mail at San Rafael, California, to the address(es) shown below.

**X** (by personal delivery) by personally delivering a true copy thereof to the person(s) listed below, at the address(es) set forth below.

____ (by Federal Express) by depositing a true copy thereof in a sealed packet for overnight delivery, with charges thereon fully prepaid, in a Federal Express collection box, at San Rafael, California, and addressed as set forth below.

____ (by electronic mail) by transmitting said document(s) to the electronic mail address listed below, which is an address from which I have previously received e mails from and to which I have previously sent e mail to the identified party

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on January 14, 2010 at San Rafael, California.

*/s/ Mitchell J. Green/*

_____
Mitchell J. Green

Parties served:
Sarah E. Robertson
(while in attendance at court, Department 19)