UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GOLDEN, M.D., | No. C-10-00437 JSW (DMR) |
| Plaintiff, | **REPORT AND RECOMMENDATION RE ENFORCEMENT OF SETTLEMENT AGREEMENT** |
| v. | |
| CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP et al., | |
| Defendants. | |

## I. INTRODUCTION AND BACKGROUND

Plaintiff, an emergency room physician, filed this race discrimination case in Alameda County Superior Court in May 2008. During the Summer of 2009, the parties engaged in two mediation sessions with a private mediator. (Delgado Decl., May 13, 2011, ¶2 [Docket No. 38-1].) Defendants subsequently removed the case to federal court in January 2010. On October 5, 2010, the parties participated in a six-hour settlement conference before Magistrate Judge James Larson; the parties were unable to resolve the case. [Docket No. 25.]

On February 4, 2011, the Honorable Jeffrey S. White referred the matter to this Court to conduct settlement proceedings. [Docket No. 28.] On March 21, 2011, the Court convened a settlement conference that lasted seven and one half hours. All parties were represented by counsel. [Docket No. 30.] During that session, at Plaintiff's request, the Court met with Plaintiff and his

1  mother for approximately two and a half hours.  The Court also met with Plaintiff and his counsel
2  together for approximately two and a half hours.  In addition, again at Plaintiff's request, the Court
3  spoke with a second attorney whom Plaintiff had retained, who was not associated with Plaintiff's
4  counsel, but was familiar with the facts of this case.

5        The matter did not fully resolve at the conclusion of the March 21, 2011 session, but the
6  parties agreed to continue settlement discussions by telephone with the Court's assistance.  [Docket
7  No. 30.]  On March 22, 2011, the parties asked the Court to circulate the Court's notes setting forth
8  the proposed material terms of the settlement agreement.  Working from those notes, the parties
9  finished negotiating and edited the notes to reflect the final material terms of a settlement agreement
10 in full resolution of this case.[1]  The Court then convened a proceeding during which the Court set
11 forth the material terms of the settlement agreement in open court on the record, and the parties
12 verified and agreed to those terms.  [Docket No. 31.]  The proceedings were audio-recorded and
13 later transcribed.  [Docket No. 36.]

14       The relevant, non-confidential portions of those proceedings are as follows:

15       **THE COURT**: [T]he parties met yesterday at a settlement conference that I
16 convened for seven and a half hours and continued to work on this matter today.  And
17 I commend the parties and their counsel on their extraordinary efforts in reaching
what I think is a -- a very favorable settlement -- full settlement of this dispute.

18       *Now, I am going to read the material terms of the settlement into the*
19 *record. . . . I'm sure the lawyers are going to reduce this to writing, but even if they*
*didn't, this settlement and this agreement is fully enforcement* [sic] *today, subject*
20 *only to one contingency, and that contingency is that the*

---

[1] The parties agreed that the terms of the settlement would be subject to a confidentiality provision. In his May 13, 2011 filings, [Docket No. 42], Plaintiff included a copy of the Court's circulated notes, [Docket No. 42 Ex. 6], as well as the parties' edited version of the notes. [Docket No. 42 Ex. 7.] Because Plaintiff's filings included confidential information as well as confidential settlement communications, the Court ordered that Plaintiff's submissions be filed under seal. [Docket No. 40.] For the same reason, the transcript of the open court proceedings during which the parties set forth the material terms of their confidential agreement is also filed under seal and are available solely to the parties and their counsel [Docket Nos. 36 (under seal), 46.]

United States District Court
For the Northern District of California

*settlement terms must be approved by Defendant CEP's Governing Board by the close of business on March 30th, 2011. That's the only contingency.*[[2]] *Other than that, this is fully binding.*

So here are the material terms:

. . . . *[terms omitted due to confidentiality of settlement]*

Let me start by asking Mr. Green [Counsel for Plaintiff]. Do you agree, Mr. Green, on behalf of the Plaintiff that I have just read the material terms of the settlement?

**MR. GREEN:** Yes, I do, Your Honor. There were two things that I'd like to suggest here. One is that the Court retain jurisdiction to review any dispute that might arise in the drafting the final document.

Is that okay with you?

**MS. ROBERTSON** [Counsel for Defendants]: That's acceptable.

**MR. GREEN**: And the other is that we get some outside date for the payment after the -- the payment becomes effective 60 days --

**MS. ROBERTSON**: That's fine.

**MR. GREEN**: Okay. And with those two provisos, you do -- you have recited them as I -- I guess I understand them to have been negotiated.

**THE COURT**: Okay. Now -- so just to make clear, what I read -- the material terms with two small additions -- one is that the [redacted amount] global settlement shall be due and payable within 60 days of the execution of the written document?

. . . .

**MR. GREEN**: And I'm sorry. 60 days from the day that the CEP Board approves it.

**THE COURT**: . . . . Ms. Robertson, do you have any objection to that?

. . . .

**MS. ROBERTSON**: No, I don't.

**THE COURT**: All right. So it shall be six -- no later than 60 days from the date of approval by CEP's Governing Board, which shall be by the close of business on March 30th.

. . . .

**THE COURT**: Okay. And *Ms. Robertson, do you agree that what I read as the material settlement terms, along with the additions and modifications we just made, constituted the material settlement terms in this case?*

---

[2] Defendant CEP's Governing Board apparently met the sole contingency and approved the settlement agreement, as there is no contrary indication in the record.

**MS. ROBERTSON**: *Yes, I do, Your Honor.*

. . . .

**THE COURT**: Okay. So the question to you is, *do you have full authority to settle on these terms on behalf of all the Defendants, California Emergency Physicians Medical Group, MedAmerica, Dr. Mark Alderdice and Dr. Robert Buscho?*

**MS. ROBERTSON**: *Yes, I do, Your Honor.*

**THE COURT**: *And do you agree to the terms of the settlement on behalf of all of those Defendants?*

**MS. ROBERTSON**: *Yes, Your Honor.* The only things that were new to me were the drafting -- that -- the Court's jurisdiction issue and the date of the payment of the check, and I think that I -- I can't imagine my client would have a problem with either of those.

**THE COURT**: Okay. But the -- but we would need --

**MS. ROBERTSON**: I have authority to do it.

**THE COURT**: Okay. *And do you agree to all of the terms on behalf of all Defendants?*

**MS. ROBERTSON**: *Yes, Your Honor.*

**THE COURT**: Okay. Dr. Golden, you've heard all of the terms of the settlement. Do you agree to the terms of the settlement?

**MR. GOLDEN**: I -- I'm sorry, but I have -- I -- I have a question about the hospitalist part.

**MR. GREEN**: May -- may -- may we recess for just a second and let me see if I can address Dr. Golden's --

**THE COURT**: We will recess for just one moment.

**MR. GREEN**: Okay.

(Whereupon there was a recess in the proceedings from 3:56 p.m. until 3:59 p.m.)

**THE COURT**: Is counsel ready to proceed?

**MR. GREEN**: Yes.

**THE COURT**: Okay. The Plaintiff, Dr. Golden, asked for -- for a moment to confer with his counsel, so let me renew the question. *Dr. Golden, do you understand the terms of the settlement agreement?*

**MR. GOLDEN**: *Yes.*

**THE COURT**: And do you --

**MR. GOLDEN**: Yes.

> **THE COURT**: *And do you agree to all of the terms of the settlement agreement as a full settlement of your case?*
>
> **MR. GOLDEN**: *Extremely reluctantly, because of the one line, I agree to the terms of the settlement.*
>
> **THE COURT**: Okay. I understand your --
>
> **MR. GOLDEN**: Extremely reluctantly.
>
> **THE COURT**: *Okay. But your answer is yes, you agree to the terms of the settlement?*
>
> **MR. GOLDEN**: *Yes, Your Honor.*
>
> **THE COURT**: *Okay. Very good. So the matter is settled, subject only to approval by the CEP Board.*

(Settlement Conference Hr'g Tr. 2:19-11:20, Mar. 22, 2011 (emphasis added).)

On March 28, 2011, without his counsel's knowledge or advice, Plaintiff called the court clerk's office in an attempt to renege on the settlement agreement. [Docket No. 32.] On April 11, 2011, counsel for both parties prepared a Joint Notice of Settlement. However, Plaintiff instructed Green not to file the notice. [Docket No. 32.] Green subsequently filed a Request to be Relieved as Counsel for Plaintiff. [Docket No. 32.] On April 12, 2011 Judge White issued an Order referring the matter to this Court "for the purposes of addressing the enforcement of the settlement reached in this matter and preparing a Report and Recommendation regarding entry of judgment." [Docket No. 32.] This Court then issued a briefing schedule. [Docket No. 34.] As Defendants' brief indicated that they seek an order compelling Plaintiff to sign a written settlement agreement, the Court also ordered Defendants to submit the proposed written settlement agreement for the Court's review. [Docket No. 48 (under seal).] The matter now is fully briefed, [Docket Nos. 38, 42], and is appropriate for resolution without oral argument pursuant to Local Civil Rule 7-1(b).

## II. LEGAL ANALYSIS

Courts have inherent power to enforce settlement agreements between the parties in pending cases. *See MetroNet Servs. Corp. v. U.S. W. Commc'ns*, 329 F.3d 986, 1013-14 (9th Cir. 2003), *cert. granted and judgment vacated on other grounds by Qwest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004). A court may enforce a settlement agreement when the parties have agreed to its material terms and an oral agreement made in open court suffices to bind the parties. *Doi v.*

5

*Halekulani Corp.*, 276 F.3d 1131, 1137-38 (9th Cir. 2000); *see also Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) (holding that despite appellant's allegations that he was not bound by settlement agreement because he had not signed it, "it is well-established that an oral agreement is binding on the parties, particularly when the terms are memorialized into the record"); *Armstrong v. City & County of San Francisco*, No. C 01-2611, 2004 WL 2713068, *1 (N.D. Cal. 2004) (citing *Doi*, 276 F.3d at 1138 ("An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing.")) (enforcing oral agreement made in open court). Where the parties expressly agree to the material terms of an agreement in open court, the court need not conduct an evidentiary hearing to determine the material terms or the parties' intent to be bound. *Doi*, 276 F.3d at 1138.

In the present case, the material terms of the parties' oral settlement agreement were memorialized in open court. The Court expressly stated that even if the parties intended to reduce the agreement to writing at a later time, the agreement was immediately binding and enforceable, subject only to a board approval contingency that subsequently was met. All parties clearly indicated on the record that they understood and agreed to the terms of the settlement. In particular, Plaintiff unequivocally stated that he understood the terms of the agreement and agreed to be bound by them in full resolution of his case. Thus, under *Doi*, the parties' oral settlement agreement is binding, even though Plaintiff later had a change of heart.

Plaintiff argues that he was rushed into entering into the agreement and that he entered into it "under extreme duress" resulting from conflicts with his attorney and personal stress. His arguments are unpersuasive. During the course of this litigation, Plaintiff had the benefit of five separate facilitated settlement sessions, two with a private mediator and three with federal magistrate judges. The most recent settlement proceedings lasted nine hours over two days. Plaintiff is a highly educated physician. He was represented by counsel throughout the process and had ample opportunity to ask questions, consider and respond to proposals, and decide whether he wanted to agree to the settlement terms.

Although Plaintiff's relationship with his counsel of record later deteriorated, there is no indication that the attorney-client relationship was impaired during the settlement proceedings

6

1  leading to the agreement on record.  Counsel represented Plaintiff throughout the March 21 and 22,
2  2011 settlement conferences.  During that process, Plaintiff also consulted with a second
3  independently retained attorney about the settlement terms and asked the Court to communicate with
4  that counsel as well.  Thus, Plaintiff had the unusual benefit of full representation during the
5  settlement conference, buttressed by a second opinion.  Plaintiff's relationship with his counsel of
6  record deteriorated only *after* Plaintiff unilaterally sought to renege on the settlement agreement,
7  prompting the attorney to seek Judge White's permission to withdraw from representation. [Docket
8  No. 32.]

9  Finally, Plaintiff alleges that he suffered "considerable duress" due to his mother's serious
10 health conditions as well as his own medical issue.  Again, the argument finds no support in the
11 record.  Plaintiff's mother attended the March 21, 2011 settlement conference and even met with the
12 Court and Plaintiff for two and a half hours.  The only information submitted by Plaintiff in support
13 of his own medical condition is a March 15, 2011 letter from his dentist setting forth the serious
14 health risks caused by Plaintiff's failure to address his periodontal problems for several years.
15 Although Plaintiff may have felt stressed by this mother's health issues as well as his own, nothing
16 indicates that the stress impaired his ability to reach a binding agreement.

17 "Where the written terms of a settlement agreement are in accord with the terms agreed to on
18 the record, the written agreement is enforceable by the court."  *Armstrong*, 2004 WL 2713068 at *1
19 (citing *Doi*, 276 F.3d. at 1139-40).

20 The Court carefully has compared the written settlement agreement submitted by Defendants
21 with the material terms of the oral agreement set forth in the March 22, 2011 record transcript.  With
22 few exceptions, the Court finds that the terms of the written agreement are in full accord with the
23 oral agreement.  The content of several provisions were not part of the oral agreement; for this
24 reason, although they are in the nature of "boilerplate" terms, the Court recommends that they be
25 stricken from the written agreement.  These provisions are ¶ 2 (tax treatment), ¶ 9 (attorneys' fees
26 and costs), ¶ 10 (knowing and voluntary agreement),  ¶ 11 (binding effect), ¶ 12 (choice of law and
27 severability), and ¶ 13 (complete agreement).   In sum, the Court recommends that paragraphs 2, 9,
28 10, 11, 12, and 13 be removed from the written settlement agreement and that Plaintiff be compelled

7

to sign the resulting contract, since it accurately memorializes the oral agreement.

### III. CONCLUSION

This Court recommends that the District Court order that paragraphs 2, 9, 10, 11, 12, and 13 be stricken from the written agreement and that Plaintiff be compelled to sign the resulting written settlement agreement. The Court further recommends that this matter then be dismissed as fully resolved. Pursuant to Fed. R. Civ. P. 72, a party may serve and file objections to this Report and Recommendation within fourteen days after being served with a copy of said report.

IT IS SO RECOMMENDED.

Dated: June 23, 2011



DONNA M. RYU
United States Magistrate Judge