RICHARD C. RAINES CSB #062460
Gagen, McCoy, McMahon, Koss, Markowitz & Raines
279 Front Street
P.O. Box 218
Danville, CA 94526
Telephone: (925) 837-0585
Facsimile: (925) 838-5985

Attorneys for Plaintiff
DONALD GOLDEN, M.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONALD GOLDEN, M.D.,                          No.: C10-00437 JSW

           Plaintiff,              **PLAINTIFF'S POINTS AND
                                              AUTHORITIES IN OPPOSITION
    vs.                             TO MOTION TO ENFORCE
                                              SETTLEMENT AGREEMENT**
CALIFORNIA EMERGENCY
PHYSICIANS MEDICAL GROUP, et al.,

        Defendants.

_____/

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

<u>TABLE OF CONTENTS</u>

I.      BRIEF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     DOES SECTION 16600 BAR ONLY RESTRAINTS

        OF A "SUBSTANTIAL CHARACTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.  State law bars "any" restraints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.  The restraint rejected in Edwards was purely hypothetical . . . . . . . . . . . . . . 2

        C.  "Restraint of a substantial character" means a restraint where

            the employee "is not as free to engage in a lawful profession as

            he would have been if he were not bound by it" . . . . . . . . . . . . . . . . . . . . 2

III.    PARAGRAPH 7 IS A RESTRAINT OF A "SUBSTANTIAL CHARACTER" . . 3

        A.  Dictionary Definition of "substantial" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.  CEP's "Dominance in Emergency Medicine and its aggressive

            plans to expand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.  CEP's dominance in emergency medicine in California and its

            aggressive plans to expand restricts Dr. Golden's ability

            to practice medicine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        D.  Paragraph 7's language is extremely expansive such that CEP

            itself does not know what it means . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     THE "BOARD CERTIFICATION" ISSUE IS PURE AFTERTHOUGHT . . . . . 8

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

i

# TABLE OF AUTHORITIES

Cases

*Chamberlain v. Augustine* (1916)
172 Cal. 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10

*Edwards v. Arthur Anderson* (2008)
44 Cal.4th 927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*Golden v. California Emergency Physicians*
782 F.3d.1083 at 1089 (9th Cir; 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 9

*O'Toole v. Northrop Grumman Corp.*
499 F.3d 1218 (Tenth Cir; 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Codes

CA Business and Professions Code §16600 . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 9, 10

Other

Cambridge Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Merriam-Webster Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

1   Given Defendant CEP's "dominance of emergency medicine within the State and

2   its aggressive plans to expand its geographical footprint[1]," does the Settlement

3   Agreement violate California Business and Professions Code section 16600 ("section

4   16600")?

## I.

## BRIEF PROCEDURAL HISTORY

7   This case is before the District Court on remand from the Ninth Circuit to

8   determine the question posed above.  In its Opinion, the Ninth Circuit remanded.

9   1.   For the district court to determine in the first instance whether the no-

10  employment clause constitutes a restraint of a substantial character to Dr. Golden's

11  medical practice, and

12  2.   For further proceedings not inconsistent with this opinion.

## II.

## DOES SECTION 16600 BAR ONLY RESTRAINTS OF A "SUBSTANTIAL CHARACTER?"

A.  State law bars "any" restraints

Section 16600 voids <u>every</u> contract by which anyone is restrained from engaging in a lawful profession.  The statute contains no threshold (i.e., modest restraints are allowed) or minimum standard, such as "substantial."  The California Supreme Court made clear in *Edwards v. Arthur Anderson* (2008) 44 Cal.4th 927 that even so-called "reasonable" restraints are void:

> Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restrains that were unreasonable or overbroad, it could have included language to that effect. *Edwards, Ibid.*, at 950.

The Ninth Circuit itself acknowledged the broad scope of section 16600 and the California Supreme Court's rejection of so-called "reasonable" restraints:

Notably, *Edwards* rejected a proposed rule - "that a mere

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

---

[1]  *Golden v. California Emergency Physicians*, 782 F.3d.1083 at 1089 (9th Cir; 2016).

limitation on an employee's ability to practice his or her vocation would be permissible under section 16600 as long as it was reasonably based." *Golden*, at 1091.

Thus, section 16600 bars <u>every</u> contract which restrains employee mobility and freedom to engage in a lawful profession, even if the contractual restraint is less than substantial.

B. <u>The restraint rejected in *Edwards* was purely hypothetical.</u>

The restraint in *Edwards* was theoretical only. A clause sought to bar Edwards from (1) working for certain Los Angeles based clients for 18 months, (2) soliciting certain Los Angeles based clients for 12 months, and (3) soliciting Arthur Anderson employees for 18 months. None of these activities had yet occurred, nor were they even alleged to have occurred or even threatened. All of these circumstances were merely possibilities, yet the California Supreme Court <u>unanimously</u> found the clause violated section 16600. Thus, the inchoate nature of the restraint posed by the instant agreement does not render it enforceable.

C. <u>"Restraint of a substantial character" means a restraint where the employee "is not as free to engage in a lawful profession as he would have been if he were not bound by it."</u>

The Ninth Circuit Opinion discusses and relies upon the California Supreme Court case of *Chamberlain v. Augustine* (1916) 172 Cal. 285. In that case, the Court ruled that a contract which required a former employee to pay $5,000 if he competed was void under section 16600. The Supreme Court's discussion of section 16600 in this context is relatively short yet highly instructive:

> It imposes upon him a liability in the sum of $5,000 if he does engage in such business. If the contract is valid, he is not as free to do so as he would have been if he were not bound by it. To the extent that the necessity of paying $5,000 deters him from engaging therein, he would be restrained. This is clearly a restraint of a substantial character and the form in which it is case does not make it less a restraint...The covenant in question clearly operates to restrain the defendant from "exercising a lawful profession, trade or business" and as it does not fall within the exceptions given in section 1673, it is, therefore, void. *Ibid,* at 288.

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

Thus we see the derivation of the "restraint of a substantial character" language used in the *Golden* opinion. It comes just after the California Supreme Court reasoned that "if he is not as free to do so [engage in a lawful business, etc.] as he would have been if he were not bound by it," then he is restrained and the contract violates section 16600 and is void.

The *Chamberlain* court spent no time analyzing the <u>degree or extent</u> of the restraint and we know from *Edwards* that even so-called "reasonable" restrains are void. The *Chamberlain* court described the $5,000 restraint in that case as one "of substantial character" to mean that it was not a close question, but did <u>not</u> set any "minimum standards" on enforcement of section 16600. Dr. Golden contends that, reading the Ninth Circuit opinion in the context of the whole portion of *Chamberlain* from which its portion was taken, leads to the conclusion that the test is whether or not Dr. Golden is as free to engage in the practice of medicine *with* paragraph 7 of the Settlement Agreement as he would be without it. The compelling answer to that question is that he is not and therefore that paragraph is void and unenforceable. This result would be rational, precedent-based and "not inconsistent" with the Ninth Circuit's opinion.

## III.

## PARAGRAPH 7 IS A RESTRAINT OF A "SUBSTANTIAL CHARACTER"

A. <u>Dictionary Definition of "substantial"</u>

Since *Chamberlain* did not define or discuss what makes a restraint of "substantial character" or not, the following dictionary definitions are offered:

The Cambridge Dictionary's first meaning of "substantial" is "important or noticeable."

The Merriam-Webster Dictionary's first meaning of "substantial" is "large enough to be noticed or have an effect."

Given these definitions, it is clear that paragraph 7 has a "noticeable" effect on Dr. Golden's ability to practice medicine.

/////

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

B.  CEP's "Dominance in Emergency Medicine and its aggressive plans to expand

The Ninth Circuit has already noted CEP's "dominance in emergency medicine in this State and its aggressive plans to expand its geographical footprint."  *Golden*, page 1089.  Discovery[2] in this case to date amply supports that description of CEP's current position and future plans:

CEP's Response to Interrogatory No. 1:

Percentage of California emergency room visits treated by CEP partners:

| Year | CEP% of Total |
|------|---------------|
| 2006 | 20.1 |
| 2007 | 21.5 |
| 2008 | 22.1 |
| 2009 | 22.7 |
| 2010 | 23.0 |
| 2011 | 26.8 |
| 2012 | 28.9 |
| 2013 | 29.8 |

CEP's Response to Interrogatory No. 2:

Total Number of ED visits handled by CEP Partners

| Year | Total # of Visits Handled by CEP |
|------|----------------------------------|
| 2006 | 1,716,527 |
| 2007 | 1,904,122 |
| 2008 | 2,031,908 |
| 2009 | 2,230,580 |
| 2010 | 2,230,712 |
| 2011 | 2,689,275 |
| 2012 | 3,039,769 |

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

---

[2]  CEP's verified responses to Interrogatories confirming this data is attached to the Declaration of Richard C. Raines as Exhibit A.

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

| | |
|---|---|
| 2013 | 3,226,254 |

CEP's Response to Interrogatory No. 3

Total Number of facilities staffed by CEP Partners

| Year | Total # of CEP Contract |
|---|---|
| 2006 | 57 |
| 2007 | 62 |
| 2008 | 64 |
| 2009 | 67 |
| 2010 | 73 |
| 2011 | 88 |
| 2012 | 99 |
| 2013 | 110 |
| 2014 | 120 |
| 2015 | 131 |

Thus, CEP (according to the latest data provided) now treats almost one-third of all non-Kaiser emergency patients. It has demonstrated an aggressive program of expanding both the number of contracts and the number of ED patients treated. CEP's contracts have <u>more than doubled</u> in 10 years.

In addition, CEP is now including many more practice groups in its tent. In addition to hospitalists and urgent care physicians, CEP now contracts[3] to provide (1) anesthesiologists, (2) ambulatory urgent care physicians, (3) skilled nursing facilities, (4) ICU physicians, (5) Physical Therapists, (6) wound care specialists and (7) hyperbaric oxygen therapy. According to CEP's own internet site, CEP is also expanding into Emergency Psychiatric practice and Telehealth areas[4].

---

[3] CEP's verified responses to discovery included charts attached as Exhibit B to the Declaration of Richard C. Raines filed herewith.

[4] Excerpts from a party's own website are admissible evidence. *O'Toole v. Northrop Grumman Corp.* 499 F.3d 1218 (Tenth Cir; 2007) [finding statements on a party's own website admissible]. This material is attached to the Declaration of Richard C. Raines as Exhibit C.

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

This is certainly "dominance" in the field of Emergency Medicine in California and aggressive plans to extend that domination.

C.    CEP's dominance in emergency medicine in California and its aggressive plans to expand restricts Dr. Golden's ability to practice medicine.

As shown in the Declaration of Donald Golden, M.D. filed herewith, he would like to be able to secure employment in the San Francisco Bay where his family resides. Dr. Golden has already suffered the indignity and financial loss of termination when CEP took over the ED at St. Joseph's hospital in Eureka in 2011. Since then, he has been forced to work a number of less-than-full time jobs. Given CEP's saturation in the Bay Area, he is rightly concerned that CEP will contract with "or acquire an interest in" a Bay Area facility where he might otherwise work.

CEP currently has contracts with hospitals in Walnut Creek, Concord, Mountain View, San Rafael, Los Gatos, San Francisco, San Mateo, San Jose, Redwood City and Daly City. CEP maintains a "For Physicians" tab on its website[5], touting its benefits for physician groups "offering a wide variety of practice opportunities" and listing five "Advantages" to joining CEP. It is clear that its "aggressive plans to expand" remain operative.

D.    Paragraph 7's language is extremely expansive such that CEP itself does not know what it means.

Paragraph 7 gives CEP the right to fire Dr. Golden "without recourse" if it "contracts to provide services to or "acquires rights in a facility" where Dr. Golden then works. Dr. Mark Spiro was CEP Chief Operating Officer and/or President for many years. He testified it was clear how CEP "contracts to provide services:' The hospital that owns the ED will contract with CEP. (Spiro Deposition, page 30, line 13 to page 32,

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

---

[5] Excerpts from CEP's own website authenticated by CEP during Dr. Spiro's deposition, are attached to the Declaration of Richard C. Raines filed herewith as Exhibit D.

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

line 13[6]).  However, neither Dr. Spiro nor anyone else as CEP knows what "acquire rights in a facility" means:

> MR. RAINES: Let me show you then what's being marked as Exhibit 4. Whereupon, the document described below was marked Plaintiff's Exhibit 4 for identification.)
>
> MR. RAINES:
>
> Q. I'll represent to you that Exhibit 4 is paragraph seven from the written settlement agreement that is the focus of this upcoming trial. Let me direct your attention to the first paragraph of paragraph seven.
>
> A. Okay.
>
> Q. Specifically, "The parties further agree that if CEP contracts to provide services to or acquires rights in a facility that is an emergency room..." What does "CEP contracts to provide services" mean?
>
> A. The hospital that owns the emergency department will contract with a medical group to provide services of physicians, PAs, nurse practitioners to see the patients in the emergency department. the hospitalists -- in California, except with some rare circumstances, cannot hire them. That is, they can't be employees of the hospital. So the hospital contracts out to provide the services.
>
> Q. So your understanding is that this first clause actually means there is a written contract between the facility and CEP?
>
> A. Correct.
>
> Q. What do the words "or acquires rights in a facility" mean?
>
> A. I am not positive. Let me -- maybe if I read the whole paragraph.
>
> Q. Of course. Take your time.
>
> A. And you recognize that I didn't write this.
>
> Q. Of course not. I mean I don't know if you did or not. I'll take your word for it.
>
> A. I did not.
>
> MS. ROBERTSON: I would call it a collaboration, but that's too kind a word for how this document came to life. I can't remember if it was that we wanted it or if Mitch Green put in. I think it was the latter, but I don't remember for sure.
>
> THE WITNESS: (Reading.) My sense of that -- and again, this is written in a legal contract, so you probably have lawyers that can kind of better define

---

[6]  Excerpts of Dr. Spiro's deposition attached as Exhibit E to Declaration of Richard C. Raines.

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

what it means. But a contract to provide services or acquires rights might be the temporary staffing. It may not even -- I'm not sure what it means, to be honest. I'm not sure what that specifically means.

Q. As you sit here today, you have no idea what it means?

A. That's a little harsh, but yes.

Q. I don't sugarcoat things. And I'm not blaming you for that. I'm just clarifying it. Okay. Do you know anybody in CEP who would have a better understanding of what those words mean than you?

A. I do not, because this was created before we had our current counsel and so --

MS. ROBERTSON: Oh, you mean your current in-house counsel.

THE WITNESS: Yes. Not you, Sarah. So if there's anyone in CEP that -- I do not know.

If no one at CEP knows what the phrase "acquires rights in a facility" means, it could mean <u>anything</u> from beginning negotiations with a facility, to communicating with a physician's group at a facility to providing written materials to a physician's group. The complete uncertainty of what this phrase may mean adds to the restraint placed on Dr. Golden and establishes that he is "not as free to practice medicine with Paragraph 7 as he would be without it."

## IV.

## THE "BOARD CERTIFICATION" ISSUE IS PURE AFTERTHOUGHT

CEP argues that paragraph 7 is simply giving effect to a customer-inspired desire that all physicians contracting with the hospital be either board certified or board eligible (BC/BE). Patently, this argument is without merit for two conclusive reasons:

1. Paragraph 7 says <u>nothing</u> about BC/BE. If CEP were concerned <u>at all</u> about whether Dr. Golden was BC/BE for paragraph 7 to apply, it would have been the simplest piece of drafting:

"So long as Dr. Golden is neither Board Certified nor Board Eligible, the following rules apply...."

/////

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

- 8 -

The utter absence of any mention or discussion of BC/BE in paragraph 7 means that CEP did not care whether or not Dr. Golden was BC/BE in the future; it insisted on the right to terminate him immediately "without recourse." It simply didn't care if Dr. Golden were Board Certified or double Board Certified at the time. This BC/BE issue is a post-hoc distinction by which CEP attempts to justify what is otherwise a clear violation of section 16600.

### 2. CEP admits to having partners which are not BC

CEP admits that 2.3% of its ED partner-physicians are not board certified and 4.7% of its hospitalist partner-physicians are not board certified, and 10% of its urgent care physicians are not board certified[7]. Thus, CEP's own records demonstrate that it is not necessary to be BC/BE to be a CEP partner-physician. Dr. Golden has pointed out several instances where he was terminated on the grounds of lack of BC/BE, other physicians who were also not BC/BE were retained.

## V.

## CONCLUSION

It has been shown that Dr. Golden "is not as free to practice medicine with paragraph 7 as he would be without it." Thus, paragraph 7 violates section 16600 and constitutes an unlawful restraint on his ability to practice medicine. The Ninth Circuit has already noted that paragraph 7 is a material part of the entire settlement agreement, and if it fails, the entire agreement fails. *Golden*, at 1088.

The fact that CEP is expanding vertically and horizontally means that Dr. Golden is not as free to practice medicine with paragraph 7 as he would be without it. If paragraph 7 applied only to those facilities with which CEP currently has a contract, Dr. Golden would be free to seek employment with any non-CEP site without fear of being fired without recourse. However, paragraph 7 applies to every facility with which CEP

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

---

[7]  See CEP's Response to Interrogatories entitled "Board Certification breakdown by Practice Line (current CA CEP physicians only) as of 12/31/15," attached as Exhibit F to the Declaration of Richard C. Raines filed herewith.

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

will contract in the future and to every facility as to which CEP "acquires rights," whatever that means.

As long as paragraph 7 "deters him" from seeking employment closer to his home, "he would be restrained" and the paragraph would violate section 16600. *Chamberlain, Ibid,* at 288.

Accordingly, the settlement agreement must be held to violate section 16600 and the Motion to Enforce should be DENIED[8].

Dated: May 18, 2016

Gagen, McCoy, McMahon, Koss, Markowitz & Raines
A Professional Corporation

By: RICHARD C. RAINES_____
Attorney for Plaintiff Donald Golden, MD

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585

---

[8]  It is CEP's burden to prove that paragraph 7 does not violate section 16600.  To the extent that the Court feels that the evidence presented on each side is of equal probative value, its verdict must be against the party who bears the burden of proof, CEP.

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

# CERTIFICATE OF SERVICE
C10-00437-ISW

I, the undersigned, declare that I am a citizen of the United States, a resident of the State of California, and am employed in the County of Contra Costa , State of California.  I am over eighteen (18) years of age and not a party to the above-entitled action.  My business address is 279 Front Street, Danville, California.  On May 18, 2016, I served the following documents:

## PLAINITFF'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT AGREEMENT.

**U.S. Mail:** I enclosed the documents in a sealed envelope or package addressed to the persons listed below and placed the envelope for collection and mailing following our ordinary business practices.  On that same day, the envelope is deposited in the ordinary course of business with the U.S. Postal Service, at Danville, California, in the sealed envelope with postage fully prepaid.

X        **By E-mail or Electronic Transmission:**

**Facsimile Transmission:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below from the machine at (925) 838-5985 on the date and time recorded on the attached copy of the fax transmission report, which I printed out.  No error was reported by the fax machine that I used.  Cal. Rules of Court, rule 2.306(h).

X        **Overnight Delivery:** I enclosed the documents for service in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed below.  I placed the envelope or package for collection and overnight delivery at a regularly utilized drop box of the overnight delivery carrier.

Sarah E. Robertson, Esq.
Mark A. Delgado, Esq.
Donahue Fitzgerald LLP
1999 Harrison St., 25th Fl
Oakland, CA  94612
Tel:  (510)  451-3300
Fax:      "      451-1527
srobertson@donahue.com
mdelgado@donahue.com
**Attorneys for Defendants**

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.  Executed on May 18, 2016, at Danville, California.

Patricia A. Harris

Law Offices of
**GAGEN,
McCOY,
McMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
P.O. Box 218
Danville, CA
94526
(925) 837-0585