UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GOLDEN,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP, et al.,<br><br>    Defendants. | Case No. 10-cv-00437-JSW<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION TO WITHDRAW**<br><br>Re: Dkt. Nos. 133, 154 |

Now before the Court for consideration is the motion to enforce settlement agreement, filed by Defendants California Emergency Physician's Medical Group, MedAmerica, Mark Alderdice, and Robert Buscho ("Defendants"). Also before the Court is a motion to withdraw as counsel, filed by Richard Raines ("Mr. Raines"), who represented Plaintiff, Dr. Donald Golden ("Dr. Golden"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has determined that an evidentiary hearing on Defendants' motion is not required. For the reasons that follow, the Court GRANTS Defendants' motion, and it GRANTS Mr. Raine's motion to withdraw.

**BACKGROUND**

This lawsuit originated with claims for race discrimination asserted by Dr. Golden against Defendants. (Dkt. No. 1, Notice of Removal.) On March 21, 2011, the parties appeared before Magistrate Judge Ryu for a settlement conference, continued their discussions the following day, and reached an agreement that was placed on the record. Dr. Golden subsequently refused to sign the agreement, and when Dr. Golden's prior counsel moved to withdraw, the Court referred the matter to Judge Ryu for purposes of preparing a report and recommendation regarding

1

enforcement of the settlement agreement. (Dkt. No. 33.) In June 2011, Judge Ryu issued her report and recommendation, which the Court subsequently adopted. (Dkt. Nos. 53, 57.)

Dr. Golden continued to refuse to sign the settlement agreement and filed a notice of appeal, which was dismissed for lack of jurisdiction. (Dkt. Nos. 58, 64.) After the mandate issued, Dr. Golden's prior counsel filed a motion to intervene and to enforce the settlement agreement. (Dkt. No. 68.) Dr. Golden opposed that motion and argued that Paragraph 7 of the settlement agreement violated California Business and Professions Code section 16600.[1] On June 15, 2012, the Court granted the motion to intervene. (Dkt. No. 93, Order Granting Motion to Intervene.)

In that Order, the Court noted that Dr. Golden conceded that Paragraph 7 did not restrict him from working, but he did argue that

> he cannot work because Defendants own a large number of hospitals and facilities in California. In California, covenants not to compete are void, subject to certain exceptions. *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 945 (2008). However, Paragraph 7 is not a covenant not to compete. Rather, Paragraph 7 reflects the parties['] intent that, as part of their agreement, Defendants chose not to employ Dr. Golden at [their] facilities. It does not, however, preclude Dr. Golden from working for one of [their] competitors or at a hospital or other facility not operated by Defendants.

(*Id.,* at 5:4-11.)

Dr. Golden appealed and continued to challenge the validity of Paragraph 7. *See generally Golden v. California Emergency Physician's Medical Group*, 782 F.3d 1083 (9th Cir. 2015). The Ninth Circuit recognized that "[n]owhere in [Paragraph 7] or in the remainder of the agreement does Dr. Golden arguably surrender any right to practice his profession generally, nor any right to seek employment with CEP's competitors or at facilities in which CEP does not have an ownership interest or with which it does not contract for services." *Id.* at 1086. However, the Ninth Circuit found that this Court interpreted Section 16600 too narrowly. *Id.* at 1092.

"In determining a contract's validity under section 16600, … the court should direct its inquiry according to the actual statutory language: whether the challenged provision restrains

---

[1] The Court sets forth the relevant provisions of Paragraph 7 in an appendix to this Order.

2

anyone from engaging in a lawful profession, trade, or business of any kind. … This prohibition extends to any restraint of a substantial character, no matter its form or scope." *Id.* The Ninth Circuit reversed and remanded and directed this Court to "determine in the first instance whether the no-employment provision constitutes a restraint of a substantial character to Dr. Golden's medical practice." *Id.* at 1093.

After the mandate issued, the Court directed the parties to appear for a status conference, and Mr. Raines, who had represented Dr. Golden during the appeal, filed his notice of appearance. (Dkt. Nos. 105-107.) The parties filed briefs that addressed Dr. Golden's demand for a jury trial and the scope of an evidentiary hearing. The Court determined Dr. Golden was not entitled to a jury trial, and it set a placeholder date for an evidentiary hearing. (Dkt. No. 125.)

On May 4, 2016, Defendants renewed their motion to enforce the settlement agreement. Because, upon review of the briefs, it appeared that the parties might be able to resolve this matter without further court involvement, the Court directed the parties to appear for a further status conference. (Dkt. No. 143.) At that status conference, the Court directed the parties to attend a mediation session, and it advised them that it found an evidentiary hearing on the motion to enforce was not necessary. (Dkt. No. 148.) The parties were not able to resolve the matter at mediation, leaving the motion to enforce the settlement ripe for disposition. On September 8, 2016, Dr. Golden's counsel, filed a motion to withdraw, which Dr. Golden has opposed.

**ANALYSIS**

**A. The Court Grants the Motion to Enforce the Settlement.**

The Court retains the inherent power to enforce the Settlement Agreement. *See MetroNet Servs. Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-14 (9th Cir. 2003), cert granted and judgment vacated on other grounds by *Qwest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004). The Court evaluates the Settlement Agreement under the principles applicable to any contract. *See Adams v. Johns-Manville*, 876 F.2d 702, 704 (9th Cir. 1989). Dr. Golden contends that Paragraph 7 violates the public policy set forth in California Business and Professions Code section 16600, which states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As the party seeking to

3

avoid enforcement of the agreement, Dr. Golden bears the burden of showing Paragraph 7 violates public policy. *See Bovard v. American Horse Enterprises, Inc.*, 201 Cal. App. 3d 832, 839 (1988).

The question before the Court is whether Paragraph 7 of the Settlement Agreement "restrains" Dr. Golden from "engaging in a lawful profession, trade, or business of any kind," in violation of Section 16600. "When a contract creates an illegal restraint on trade there is nothing which the parties to the action could do which would in any way add to its validity." *South Bay Radiology Med. Assoc. v. Asher*, 220 Cal. App. 3d 1074, 1080 (1990) (internal brackets, quotations and citations omitted). The Ninth Circuit directed this Court to "determine … whether [Paragraph 7] constitutes a restraint of a substantial character to Dr. Golden's medical practice," and permitted the Court to engage in any fact-finding it "deemed prudent." *Golden*, 782 F.3d at 1093.

Dr. Golden argues that the phrase "restraint of a substantial character" should be interpreted to mean "a restraint where the employee is not as free to engage in a lawful profession as he would have been if he were not bound by it." (Opp. Br. at 2:15-17.) He derives this definition from the California Supreme Court's opinion in *Chamberlain v. Augustine*, 172 Cal. 2d 285 (1916), which the Ninth Circuit cited as a "seminal case" on Section 16600. *Golden*, 782 F.3d at 1090. In *Chamberlain*, the defendant sold plaintiffs shares of stock in a company he wanted to leave. The contract provided that if the defendant, within three years from the date of the contract, became "either directly or indirectly interested in any business …similar to that now or heretofore conducted by" his former corporation, he would pay the plaintiffs $5000.00 in liquidated damages." *Chamberlain*, 172 Cal. at 286-87. The plaintiffs filed suit and alleged that the defendant violated this provision of the contract by engaging in a similar business. The trial court sustained the defendant's demurrer on the ground that the contract was void and unenforceable, and the California Supreme Court affirmed. *Id.* at 287.

The Supreme Court reasoned that in substance, if not in form, the contract operated to restrain the plaintiff from

> carrying on the business mentioned. It imposes upon him a liability in the sum of $5,000 if he does engage in such business. If the contract is valid, he is not as free to do so as he would have been if

4

> he were not bound by it. To the extent the necessity of paying
> $5,000 deters him from engaging therein, he would be restrained.
> This is clearly a restraint of a substantial character and the form in
> which it is cast does not make it less a restraint. As stated by the
> court below: 'The circumstances surrounding the transaction, the
> recitals in the contract, and the evident purpose thereof, the fact that
> the $5,000 was to be paid as liquidated damages – the recovery of
> which is applicable only to breaches of contract- indicate that the
> parties understood that [defendant] was covenanting not to engage,
> in the state of California, Oregon, or Washington, in the business
> referred to in the covenant.'

*Id.* at 288. In sum, the Supreme Court concluded that a contract that required plaintiff to pay a penalty for engaging in his chosen business would violate Section 16600.

The *Golden* court further described the rule set forth in Section 16600 as "stringent," and stated that it "departs from the more traditional approach of the common law, which recognized a 'rule of reasonableness' with respect to covenants not to compete and other similar contractual restraints." *Id.* at 1091 n.4. The Golden court also cited *Edwards*, "the California Supreme Court's most recent statement on section 16600," to show "how strictly the state understands the statutory prescription on professional restraints." *Id.* at 1091. In *Edwards*, the court rejected the defendant's invitation to interpret the term "restrain" to "mean simply to 'prohibit,' so that only contracts that totally prohibit an employee from engaging in his or her profession, trade, or business are illegal," *i.e.* that a "limitation on an employee's ability to practice his or her vocation would be permissible under section 16600, as long as it was reasonably based." *Edwards*, 44 Cal. 4th at 947-950. "We reject [defendant's] contention that we should adopt a narrow-restraint exception to section 16600 and leave it to the Legislature, if it chooses, either to relax the statutory restrictions or adopt additional exceptions to the prohibition-against-restraint rule under section 16600." *Id.* at 950.

However, California courts also have held that an employer may require an employee to reimburse the employer for training or education it has provided, if that employee moves to a new job within a certain period of time. *See USS-POSCO Industries v. Case*, 244 Cal. App. 4th 197, 207-10 (2016); *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 1491 (2008). Arguably, such

5

conditions could, as the Ninth Circuit noted and as Dr. Golden argues, "deter" employees from leaving an employer and could restrain them from engaging in a chosen business by restricting their mobility. *See, e.g., Golden*, 782 F.3d at 1092. Yet, in *USS-POSCO*, the court found the agreement did not violate Section 16600, because "[r]epayment of the fronted costs of a voluntarily undertaken educational program, the benefits of which transcend any specific employment and are readily transportable, is not a restraint on employment." *Id.* at 210; *accord Hassey*, 163 Cal. App. 4th at 1491 ("[N]othing in the agreements Hassey signed 'restrained [him] from engaging in [his] lawful trade, business or profession.' Nothing prevented him from working for another police department, or anywhere else for that matter.").

The Court turns to whether Paragraph 7 constitutes a restraint of a substantial character to Dr. Golden's medical practice. It is undisputed that, at the time this motion was filed, Dr. Golden was employed at a hospital in Merced. (Dkt. No. 136, Declaration of Donald Golden, M.D. ("Golden Decl."), ¶ 17.) Dr. Golden also confirmed at his deposition that he has not applied to work in an emergency medicine position between 2011 and 2016. Although Dr. Golden is not a board certified physician[2], during that same time he has not been turned down for or failed to obtain any position to which he applied. (Dkt. No. 133-2, Declaration of Sarah E. Robertson ("Robertson Decl."), Ex. B (Deposition of Donald Golden, M.D. dated 1/23/2016 ("1/23/2016 Golden Depo.") at 22:20-23:10); Robertson Decl. Ex. B (Deposition of Donald Golden, M.D. dated 2/4/2009 ("2/4/2009 Golden Depo.") at 145:4-147:21; Robertson Decl., Ex. E (Dr. Golden's Responses to Defendants' Special Interrogatories, Set Two, Nos. 1, 4).) It also is undisputed that he has been employed continuously since 2009 and that the income he has earned from his practice of medicine has generally increased between 2010 and 2014. (Robertson Decl., Ex. C (1/23/2016 Golden Depo. Exs. 1-2.)

Dr. Golden lives in Berkeley and attests that he "would like to seek employment closer to my home." (Golden Decl., ¶ 18.) In response to Defendants' interrogatories, Dr. Golden stated that the geographic scope of his job search has been within California, "north of Fresno."

---

[2] To the extent that fact may restrict his ability to find employment, it is not a restraint imposed by Paragraph 7.

6

(Robertson Decl., Ex. E (Dr. Golden's Response to Defendants' Special Interrogatories, Set Two, No. 10.) To the extent Dr. Golden's preference to work closer to his home is a restraint on his ability to practice medicine, it is not a restraint imposed by Paragraph 7. It is evident from Dr. Golden's argument and his declaration that his primary concern is with the portions of Paragraph 7 that address Defendants' rights in the event CEP acquires or contracts with a facility at which Dr. Golden has obtained employment in the interim. (*See, e.g.,* Golden Decl., ¶¶ 17-18, 21.)

For example, Dr. Golden attests that he has contracts with "Dignity, AHS, Kindred, [and] Sutter," and attests that CEP also has contracts with these organizations and, thus, if he signs the settlement agreement he could and would be fired. (*Id.*)[3] The *Chamberlain* court cited with approval the lower court's consideration of the "circumstances surrounding the transaction" when it determined whether the contract at issue was void. The Court shall do likewise. The circumstances surrounding the transaction in this case are the negotiation of an agreement that purported to resolve litigation between an employee and his former employer, pursuant to which the employer determined it did not want to be required to hire that employee at present or in the future.

Finally, Dr. Golden attests that he feels impeded in his ability to seek employment closer to home, because of CEP's presence in Northern California. (Golden Decl., ¶ 18.) Defendants attest that "[a]pproximately 160 of CEP's service locations are in California." (Dkt. No. 133-4, Declaration of Theo Koury, M.D. ("Koury Decl."), ¶ 5.) Defendants also attest that CEP staffs 25 ambulatory and urgent care sites in California, but only nine of those sites are north of Fresno. (Dkt. No. 133-5, Declaration of Gail Silver, M.D., ¶ 5.) The record shows the percentage of California emergency room visits treated by CEP partners has grown from 20.1% to 29.8 percent between 2006 and 2013, that in 2013 over 3,000,000 visits to emergency departments were

---

[3] Dr. Golden attests that if he signs the settlement agreement, CEP can and will fire him from those jobs. (Golden Decl., ¶ 18, lines 8-13.) He also states that CEP would remove him immediately if it were to acquire a contract with the hospital in Merced. (*Id.*, ¶ 1, lines 1-3.) Defendants object to those statements on the basis that Dr. Golden lacks personal knowledge of those facts, the statements lack foundation. It also objects to Dr. Golden's statement that Paragraph 7 provides for "no exceptions" to the ability to fire him on the basis that it calls for improper expert testimony. The Court SUSTAINS these objections.

handled by CEP partners, and that in 2015, CEP had approximately 131 facilities staffed by its partners. (Dkt. No. 139-2, Declaration of Richard Raines ("Raines Decl."), ¶ 2, Ex. A (CEP Responses to Interrogatories 1-3).)

Dr. Golden argues these statistics show "CEP (according to the latest data provided) now treats almost one-third of all non-Kaiser emergency patients." (Opp. Br. at 5:15-16.) However, as noted above, Dr. Golden has not applied for a position in emergency medicine since 2011. Defendants also note that although CEP does have plans to expand its services, "the vast majority of the service locations that were considered part of the Growth Targets in the Strategic Plan are located outside California." (Khoury Decl., ¶ 11.) Dr. Koury attests that there are "far fewer opportunities for grown in California, primarily because so many of the service locations in the state are part of the Kaiser system, and it is extremely unlikely that any medical group other than Kaiser would staff a Kaiser-owned service location. When the geographic area is further limited to Northern California, the number of opportunities is … much smaller. In fact, CEP is currently in contract negotiations with only one prospective service location in San Francisco – a hospital medicine contract[.]" (Koury Decl., ¶ 11.)

The Court concludes that Dr. Golden has not demonstrated that Paragraph 7 constitutes a restraint of a substantial character to his medical practice. Accordingly, the Court GRANTS the motion to enforce the settlement agreement.

**B.    Motion to Withdraw.**

On September 8, 2016, Mr. Raines moved to withdraw, on the basis that he has retired from the practice of law, no other attorneys at his firm are willing to represent Dr. Golden, and the purpose for which he was retained is complete. (Dkt. No. 154.) Dr. Golden opposes the motion, and states that it was his understanding that his relationship with Mr. Raines and his firm would remain "on-going and would continue until Judge White made a decision on remand from the Ninth Circuit. (Dkt. No. 157, Opposition and Declaration of Donald Golden, M.D. at p. 5, ¶ 13.)

The Court has now made its decision on remand, and the Court finds that Mr. Raines has demonstrated good cause to withdraw. Accordingly, the Court GRANTS the motion to withdraw.

//

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to enforce the settlement agreement, and it GRANTS Mr. Raine's motion to withdraw. If Defendants have not yet deposited the settlement funds in the Court registry, they shall do so within thirty (30) days of the date of this Order. The Court shall not require distribution of the funds until Dr. Golden has exhausted any appeal options, and it shall provide all interested parties with notice and an opportunity to be heard before any such distribution occurs. Within thirty (30) days of the date of this Order, Dr. Golden shall sign the Settlement Agreement. The Court DISMISSES this action with prejudice on the basis that the Settlement Agreement is binding, legal, and fully enforceable.

In light of the Court's ruling on the motion to withdraw, the Clerk shall serve a copy of this Order on Dr. Golden.

**IT IS SO ORDERED.**

Dated: November 28, 2016

_____
JEFFREY S. WHITE
United States District Judge

**APPENDIX A**

7. Golden's Limited Rights to Future Work at a CEP-contracted Facility. The parties agree that, except as specified in Paragraphs 7a and b, below, Golden shall not be entitled to work or be reinstated at any CEP-contracted facility or at any facility owned or managed by CEP. The parties further agree that if CEP contracts to provide services to, or acquires rights in, a facility that is an emergency room as defined and regulated by California law at which Golden is employed or rendering services, CEP has the right to and will terminate Golden from any work in the emergency room without any liability whatsoever. Similarly, the parties agree that if CEP contracts to provide services to, or acquires rights in, a facility at which Golden is employed or rendering services as a hospitalist, CEP has the right to and will terminate Golden from any work as a hospitalist without any liability whatsoever.

    a. Golden's Limited Right to Work at Urgent Care Facility if Acquired by CEP in Future.

If and only if CEP contracts to provide services at, or otherwise acquires rights in, an urgent care facility that is not an emergency room as defined and regulated by California law, and Golden is already working at that urgent care facility, Golden may be entitled to continue working at that urgent care facility, if and only if each and every one of the following conditions is met.

        i. Golden is already working in an urgent care facility that is not owned, operated or staffed by CEP;

        ii. The urgent care facility does not constitute or operate within an emergency room as defined and regulated by California law;

        iii. Golden has worked at the urgent care facility beyond his probationary period;

        iv. Golden has received any certification required by the urgent care facility; and

        v. In representing his work history to the urgent care facility, Golden has not materially omitted any relevant work experience, except that it shall not, for purposes of this provision, be deemed a material omission, if Golden lists the facilities at which he has worked

without noting his past affiliation with CEP.

        b.      CEP's Rights and Objections in the Event Golden Works at Urgent Care Facility Acquired by CEP in Future.

In the event that each of the foregoing conditions in Paragraph 7a is met, CEP shall recognize Golden in an appropriate status (as consultant, independent contractor or some other status to be determined solely by CEP) and Golden may continue to work at the facility not withstanding CEP's contract with and/or acquisition of rights in the facility, subject to the following terms and conditions:

        i.      For the first six months after CEP contracts with or acquires rights in the facility, Golden shall be entitled to hourly compensation comparable to what he was earning at the time of CEP's acquisition of or contract with the facility. Thereafter, Golden's hourly compensation shall be generated by the generally applicable compensation methodology that is determined by the site;

        ii.      Golden shall not be entitled to work more shifts than he was working at the time CEP acquired rights in the facility;

        iii.      If Golden is subject to adverse action based on medical disciplinary cause, he shall be entitled to appropriate peer review;

        iv.      Nothing in this Agreement is intended to diminish Golden's rights to any non-judicial process or rights to which he is entitled by contract with the facility at which he is working, or to which he is entitled as a physician under California law; and

        v.      If the owner or management of the facility at which Golden is working independently requests that Golden be removed from the schedule, CEP shall be entitled to do so, without any liability, and with no obligation to reassign him.